FRED A. RISSER, President State Senate
On behalf of the Senate Committee on Organization you have asked several questions relating to seniority of teachers in school districts in Milwaukee County, but outside the City of Milwaukee. Central to your inquiry is the application of sec.118.23, Stats., entitled Populous counties; teacher tenure. The underlying problem is the order in which principals and other administrators should be laid off in situations where enrollment is declining and the need for existing administrative staff is thus reduced. Your questions will be answered seriatim.
 1. Does the term "teacher" as defined in Section 118.23 (1), Wis. Stats., include the following classifications of employees: A. Principals? B. Assistant Principals? C. Directors of elementary or secondary instruction? D. Directors of Curriculum?
Section 118.23, Stats., establishes a system of tenure for teachers and principals in schools in any county having a population of 500,000 or more. Before a person can claim rights under sec. 118.23, Stats., he or she must satisfy the four basic requirements in the definition of "teacher" therein, namely:
 (1) Possession of a teacher certificate or license and whose legal employment requires such certificate or license;
(2) Is employed full time; *Page 7 
 (3) Meets the minimum requirements prescribed by the governing body employing such person;
 (4) Is employed by a school board, board of trustees or governing body of any school lying entirely and exclusively in a county having a population of 500,000 or more, which now means only Milwaukee County.
The analysis herein is based on the assumption that each of the classifications of employes in question satisfies requirements two, three, and four above. The controlling consideration, therefore, is whether the legal employment of such persons depends on their possessing a teacher's certificate or license. It is my opinion that since persons employed as principals, assistant principals, directors of elementary or secondary instruction and directors of curriculum are not required to possess a teacher's certificate or license they do not come within the definition of teacher under sec. 118.23, Stats.
Before July 1, 1980, all school administrators (e.g, principals or assistant principals) were required by administrative rule (PI 3.07 (10)) to possess a valid teacher's license in order to be licensed as a school administrator. Now, they are required only to be eligible to hold a Wisconsin license to teach in either elementary or secondary schools, depending on the type of administrator license sought (PI 3.07 (11)). Although actual teaching experience is required, it need not be secured in Wisconsin. (See PI 3.07 (11)(c)1.b. and (d)1.b.)
Licensing for the classifications "directors of elementary or secondary instruction" and "directors of curriculum" is governed by PI 3.07 (14). To be licensed, an applicant must either be eligible to hold a license to teach at the level of supervision involved or have completed an approved teacher education program. Also, such applicant must, among other requirements, have a minimum of three years teaching experience at the level of supervision involved.
In view of these administrative rules, it is clear that persons employed as principals, assistant principals, directors of elementary or secondary instruction or directors of curriculum are not legally required to possess a teacher's certificate or license. This is not to say, however, that a person's employment in one of these job classifications cannot be conditioned on the possession of a teacher's certificate *Page 8 
or license. Unquestionably, the governing body employing such person may impose such condition as a minimum requirement for employment. Such a condition does not affect a person's "legal employment," however. A person is legally employed in any of the classifications in question provided that person meets the statutory and administrative rule requirements for such employment.
 2. Are the following classifications of Administrators covered by the provisions of Section 118.23 (4), Wis. Stats.: A. Principals? B. Assistant Principals? C. Directors of Elementary or Secondary Instruction? D. Directors of Curriculum?
Subsection (4) sets forth procedures to be followed in the event it becomes necessary to decrease the number of permanently employed teachers by reason of declining student enrollment within the school district. Permanent employment is secured by satisfying the tenure provisions set forth at subsec. (2). Subsection (2) makes clear that tenure as a teacher is not affected by reason of employment as a principal.
Thus, although principals may also qualify as tenured teachers under sec. 118.23 (2), Stats., the clear legislative intent is to differentiate between teachers as a class and principals as a class with respect to tenure. There is no similar distinction drawn between directors of elementary or secondary instruction or directors of curriculum and regular classroom teachers. Although such persons may under parochial circumstances qualify as tenured teachers (e.g., if their employment is conditioned upon their continuing status as teacher), they do not have any additional tenure rights in any particular administrative position. Seegenerally State ex rel. Farley v. Bd. of School Directors,49 Wis.2d 765, 183 N.W.2d 148 (1971).
Under subsec. (4) permanently employed teachers may be laid off in the inverse order of appointment and if vacancies occur thereafter such teachers shall be reinstated in inverse order of their being laid off, if qualified to fill the vacancies.
There is nothing in subsec. (4) or in the legislative history of sec. 118.23, Stats., to indicate legislative intent to differentiate among *Page 9 
permanent (tenured) teachers who are qualified to fill a teaching position on any basis other than order of appointment. It is therefore my opinion that principals and assistant principals who also are tenured teachers are covered by the subsec. (4) procedures both as to layoffs and recalls. Because directors of elementary or secondary instruction and directors of curriculum as such are not teachers as defined in sec. 118.23 (1), Stats., it follows that in that status they are not covered by subsec. (4) procedures. How these procedures are applied to specific situations is considered in several of your remaining questions.
In your next question you ask that I assume a school district wishes to properly prepare a lay off list applicable to persons who are certified or licensed and who are permanently employed in the above listed classifications covered by sec. 118.23 (4), Stats. You ask:
 3. Does the phrase "order of appointment" as it is used in Wisconsin Statute Section 118.23 (4) mean: (a) the date that an individual was first appointed to the teaching staff of the school district; or (b) the date that a person was first appointed to any [of the above listed] position [s] . . . . [You limit this question to persons who were previously members of the teaching staff in the district.]
The phrase "order of appointment" is broad enough to include both situations you describe. As already indicated, a classroom teacher is permanently employed if he or she has acquired tenure. Section 118.23 (2), Stats., creates two tenure classifications. Although principals as such do not come within the definition of teacher for purposes of sec. 118.23, Stats., the Legislature established certain additional tenure rights and benefits for principals. In other words, principals can acquire tenure in the school system or school in the general job classification of principal in addition to tenure as a classroom teacher. Although a teacher may acquire tenure as a teacher and thereafter also acquire tenure as a principal, it was not the intent of this section to establish tenure in any specific staff position. SeeFarley. Nor is tenure extended to any administrative staff position other than that of principal. Rather, the intent was to provide job security and permanent employment for two broad general job classifications, firstly all classroom teachers and secondly all principals. *Page 10 
Recall that subsec. (2) provides that "a person who acquired tenure as a teacher under this section shall not be deprived of tenure as a teacher by reason of his [or her] employment as a principal."
When subsec. (2) and subsec. (4) are read together it is necessary, for internal consistency and to give effect to tenure for principals, to treat teachers and principals separately in effecting layoffs. Thus, if it becomes necessary to lay off permanently employed principals they would be subject to layoff in the inverse order of appointment as principals. Thus, the least senior principal in the school system would be laid off first. If such person also had acquired tenure as a classroom teacher, he or she would then be included in the teacher population subject to layoff in the inverse order of appointment as a teacher. If a person had not acquired tenure as a classroom teacher prior to appointment as a principal, then that person would not be entitled to the protections afforded tenured teachers. This would occur, for example, if an individual were appointed principal directly from a different school system or had been in the school system for less than the requisite number of years to gain tenure as a classroom teacher in that system.
A more difficult problem arises in determining whether a tenured teacher who has been appointed principal should be credited with both the years served as a classroom teacher and as a principal for purposes of "seniority."
As indicated, tenured principals who are subject to layoff have additional rights for purposes of layoff even if they also had acquired tenure as teachers prior to their appointment as principal. When placed back into the teacher pool for purposes of determining order of layoff it would be the date of their appointment as a classroom teacher that is controlling. Even though an individual was no longer an active classroom teacher after assuming responsibilities as a principal, that person nevertheless retained tenure as a teacher for purposes of layoff under the statute. Appointment to the position of principal is generally considered to be a promotion for a teacher. Accordingly, the evident legislative intent is to ensure that a person so appointed is not penalized in terms of order of dismissal for accepting such a position. Sec. 118.23 (2), Stats. *Page 11 
It follows that supervisory positions other than principals, such as directors of elementary or secondary instruction and directors of curriculum, are not subject to the layoff and recall provisions applicable to teachers. If, however, such persons had acquired tenure as a teacher prior to assuming the additional responsibilities as a director, and the governing body employing such person requires that such person maintain teacher status, such persons arguably enjoy the same rights as all others who have acquired tenure as a teacher. They do not, however, have additional tenure in the staff position of a director.
 4. If a school district wishes to lay off one or more permanently employed principals, pursuant to Section 118.23 (4), . . . how much seniority credit may the district give to an individual who, when they were first appointed as principal, held a full-time position that consisted of a part-time principal position and a part-time teaching position?
The analysis regarding question three above makes clear that the controlling consideration is the date of appointment whether it be as a classroom teacher or as a principal. The date that a person was first appointed a principal within the district would determine the amount of seniority for purposes of effecting layoffs within the general classification of principal. The fact an appointed principal is given teaching responsibilities does not alter the character of the appointment as one to a supervisory position. As long as the individual is a full-time employe and otherwise satisfies the tenure requirements for principals, that individual is entitled to full seniority from the date of appointment as principal.
 5. Does the answer to question number 4 change if the employee is in a part-time position in either the item C [Directors of Elementary or Secondary Instruction] or D [Directors of Curriculum] classification listed in question number 2?
As already suggested, teacher tenure laws are to be strictly construed. Farley, 49 Wis.2d at 771. Persons who accept duties as directors of elementary or secondary instruction or directors of curriculum do not acquire any special tenure rights in those positions pursuant to sec. 118.23, Stats. Such persons are simply included *Page 12 
within the general teacher population for purposes of layoffs if they are tenured teachers, notwithstanding the additional qualifications needed in order to hold such a position. It does not necessarily follow, however, that layoffs governed by sec.118.23, Stats., must be effected on the basis of date of appointment considerations only. The discussion hereinafter concerning your remaining questions takes into consideration the effect that special qualifications for a particular job have on implementation of the layoff decision.
 6. If the answer to any of the subsections in question number 2 are yes, does the employee have the right to bump into a "promotion" or higher administrative position covered by Section 118.23 if that employee is certified for the position and has more experience as an administrator in the district and the district is contemplating decreasing its administrative staff?
The ability of an employe to "bump" into another position is not specifically covered in sec. 118.23, Stats. Bumping, or the right of an employe to a less senior employe's job, is a common practice where seniority is the primary criterion for effecting layoffs and recalls. Section 118.23 (4), Stats., implicitly allows bumping. Regarding reinstatement following a layoff, subsec. (4) provides: "Such teachers shall be reinstated in inverse order of their being laid off, if qualified to fill thevacancies." Thus, once a layoff is effected, the most senior teacher qualified to fill an open classroom teaching position has a right to that job regardless of who held the position at the time of the layoff.
Since teacher tenure laws must be strictly construed, sec.118.23, Stats., cannot be expanded through construction to guarantee that an individual will have permanent employment in any particular position. See Farley, 49 Wis.2d at 771. Although all teachers must be considered in the same general pool for purposes of layoff, it nevertheless would make no sense to require the employer to lay off the least senior teacher regardless of position if there were no more qualified senior employes to fill the position, assuming that the position is not one being eliminated. The same reasoning, of course, applies to principals. *Page 13 
For example, the least senior principal, even though holding a highly responsible position, would be subject to layoff first even though that position could then be filled with a more senior principal qualified for the position whether or not such action would under normal circumstances be considered a promotion. This is possible because principals as a class, unlike other administrators, are guaranteed tenure rights.
 7. May a principal who is laid off pursuant to Wisconsin Statute Section 118.23 (4), demand that he [or she] be allowed to "bump" a permanently employed teacher who has had less full time service (including both administrative time and teaching time) within the district than the principal, provided the principal is certified for the position held by that teacher?
Under the analysis regarding question number six a laid off principal, who also has tenure as a teacher, and has the requisite qualifications, could in effect bump into a teacher position provided there are less senior teachers available for layoff. Obviously, the reverse is not possible since a tenured teacher would have no seniority rights in principal positions.
 8. May persons (teachers or administrators) who have been laid off pursuant to Wisconsin Statute Section 118.23 (4), who could have "bumped" into other jobs within the school district (prior to layoff) had they been certified for those positions, secure such certification while on layoff and upon being so certified "bump" into other jobs held by persons within the school district who have less seniority than they?
The controlling consideration is the status of the employe at the time of the layoff and subsequently at the time of reinstatement. Each event is independent of the other. If a senior teacher is not qualified to fill a position retained by the employer, a less senior qualified teacher has a right to that position at the time layoffs are effected. The subsequent acquisition of requisite qualifications cannot affect the earlier layoff decision. To conclude otherwise would give some persons rights to employment clearly not specified in sec. 118.23, Stats. *Page 14 
On reinstatement, the most senior qualified individual must be offered the position first. There is nothing in sec. 118.23, Stats., to suggest that qualifications cannot be secured during a layoff period. It is my opinion that the controlling consideration is whether the individual has the qualifications to fill the position at the time of reinstatement regardless of when or how those qualifications were secured.
 9. Would it be correct to conclude that the provisions of Section 118.23 override any contrary provisions, in regard to "bumping" into a bargaining unit, found in a collective bargaining agreement between teachers and a school district?
Unquestionably a layoff-reinstatement proposal is a mandatory subject of bargaining under the Municipal Employment Relations Act, sec. 111.70, et seq. Stats. Mack v. Joint School District,No. 3, 92 Wis.2d 476, 488, 285 N.W.2d 604 (1979); BeloitEducation Ass. v. WERC, 73 Wis.2d 43, 242 N.W.2d 231 (1976). These collective bargaining rights are available to all teachers. It follows that teachers may secure additional rights in this general subject area through collective bargaining
The tenure provisions in sec. 118.23, Stats., however, are directed only to teachers in a county having a population of 500,000 or more. Section 118.23, Stats., in comparison to the Municipal Employment Relations Act, is a much more specific statute. I have found nothing in the legislative history of the Municipal Employment Relations Act to indicate that the Legislature intended to qualify the specific layoff and reinstatement rights guaranteed certain teachers under sec.118.23, Stats., when it authorized collective bargaining. Cf.Board of Education v. WERC, 52 Wis.2d 625, 640, 191 N.W.2d 242
(1971); Faust v. Ladysmith-Hawkins School Systems,88 Wis.2d 525, 277 N.W.2d 303 (1979). Compare sec. 111.93 (3), Stats., andWERC v. Teamsters Local No. 563, 75 Wis.2d 602, 613-14,250 N.W.2d 696 (1977).
BCL:JDN *Page 15