MARY JO NEYLAND *v.* BOARD OF EDUCATION OF THE TOWN OF REDDING
(12046)

HEALEY, PARSKEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued December 6, 1984—decision released February 5, 1985

*Edward M. Sheehy,* for the appellant (defendant).

*Martin A. Gould,* for the appellee (plaintiff).

SHEA, J. This is an appeal from a judgment of the trial court sustaining an administrative appeal brought pursuant to the Uniform Administrative Procedure Act (UAPA), General Statutes §§ 4-166 through 4-189. The trial court found that the plaintiff, a nontenured school teacher in the town of Redding, had not been accorded the procedural protections required by the UAPA and the due process clause of the fourteenth amendment when the defendant board of education decided not to renew her contract of employment for the 1975–76 school year. We hold that the UAPA was inapplicable to the board's action and that the court should have dismissed the appeal for want of jurisdiction.

The facts underlying this controversy are essentially undisputed. At the time this action arose, the plaintiff, Mary Jo Neyland, was in the second year of her employment as a certified teacher with the defendant, the board of education of the town of Redding. On or about February 6, 1975, the plaintiff was notified in writing pursuant to General Statutes § 10-151 (a)[1] that her con-

---

[1] At the time in question, General Statutes § 10-151 (a) provided in relevant part: "The contract of employment of a teacher shall be in writing and may be terminated at any time for any of the reasons enumerated in subdivisions (1) to (6), inclusive, of subsection (b) of this section, but otherwise it shall be renewed for a second, third or fourth year unless such teacher has been notified in writing prior to March first in one school year that such contract will not be renewed for the following year, provided, upon the teacher's written request, such notice shall be supplemented within five days after receipt of such request by a statement of the reason or reasons for such failure to renew. Such teacher may, upon written request filed with the board of education within ten days after the receipt of such notice, be entitled to a hearing before the board to be held within fifteen days of such request. The teacher shall have the right to appear with counsel of his choice at such hearing."

The six reasons provided in subsection (b) were: "(1) Inefficiency or incompetence; (2) insubordination against reasonable rules of the board of education; (3) moral misconduct; (4) disability, as shown by competent medical evidence; (5) elimination of the position to which the teacher was appointed, if no other position exists to which he may be appointed if qualified; or (6) other due and sufficient cause . . . ."

tract with the defendant board of education would not be renewed for the 1975–76 school year. The plaintiff requested and received a statement of the reasons for the board's decision.[2] The plaintiff then requested, as provided by § 10-151 (a), a hearing before the board concerning the nonrenewal of her contract. A hearing was held on March 31, 1975, at which time the defendant board rested on its statement of reasons, and the plaintiff presented evidence in an attempt to rebut those reasons. On the following day the plaintiff was informed that the board had affirmed its decision not to renew her contract.

The plaintiff appealed to the trial court, alleging violations of the UAPA and the due process clause of the United States constitution.[3] The plaintiff's appeal was sustained on May 15, 1980, but the trial court on June 13, 1980, granted the defendant's motion to set aside

[2] By letter dated February 13, 1975, the board listed four reasons for its decision not to renew the plaintiff's contract:

"(1) The Board questions your ability to refrain from abrading relationships with some other staff members and administrators.

"(2) You have demonstrated an unwillingness to consider in a constructive manner suggestions for program and personal behavior modification from supervisors.

"(3) You have demonstrated an inflexibility in understanding and accepting that the limited resources (material and personnel) of a small school system must be allocated in the best interests of the whole student community.

"(4) You have indicated an inflexibility regarding assignments you can accept, both in terms of the section of the building in which you can work and the number of students whom you can successfully instruct at any one time."

[3] Specifically, the plaintiff claimed that the decision of the board was not sufficiently supported by the evidence under the UAPA and was rendered in violation of the UAPA's procedural requirements; that the board did not sit as an impartial tribunal in violation of the fourteenth amendment to the United States constitution; and that the board erred in admitting hearsay evidence in violation of General Statutes § 10-151 (a) and the fourteenth amendment. The defendant board denied each of these allegations.

the judgment pursuant to General Statutes § 51-183b.[4] A new trial was held, and the plaintiff's appeal was again sustained. By judgment of October 6, 1982, the defendant was ordered to reinstate the plaintiff and to hold an evidentiary hearing on the issues of back pay and lost benefits. From this judgment the defendant has appealed.

Initially we must address the defendant's contention that the plaintiff had no right to appeal the action of the board and, hence, that the court had no jurisdiction. "The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage of the proceedings. Practice Book § 3110. If at any point it becomes apparent to the court that such jurisdiction is lacking, the appeal must be dismissed." *Laurel Park, Inc.* v. *Pac,* 194 Conn. 677, 678–79 n.1, 485 A.2d 1272 (1984). If we conclude that the court lacks jurisdiction, it will be unnecessary to reach the merits of the appeal. See, e.g., *State* v. *Parker,* 194 Conn. 650, 657 n.7, 485 A.2d 139 (1984).

The defendant relies principally on our decision in *Lee* v. *Board of Education,* 181 Conn. 69, 74–76, 434 A.2d 333 (1980), in arguing that the UAPA does not provide a right to appeal any action of a board of education. In *Lee,* we considered a 1975 amendment excluding boards of education from the ambit of the UAPA; see General Statutes § 4-166 (1);[5] "as constru-

---

[4] When the defendant's motion was made on June 13, 1980, General Statutes § 51-183b required that the trial court "render judgment not later than eight months from the commencement of the trial of [any] civil cause." The first trial of this case commenced on July 20, 1979, and judgment was not rendered until May 12, 1980. The ruling setting aside the judgment and ordering a new trial has not been challenged by either party.

[5] General Statutes § 4-166 (1) defines the agencies subject to the UAPA. Public Acts 1975, No. 75-529, provides in part: "Sec. 2. Subsection (1) of section 4-166 of the general statutes is repealed and the following is substituted in lieu thereof: (1) 'Agency' means each state board, commission, department or officer, other than the legislature, courts, governor, lieu-

ing and clarifying the original scope of § 4-166 (1) and, therefore, a legislative declaration of the meaning of the original act." Id., 75–76. We went on to deny the applicability of the UAPA to a board of education in a case, like the present appeal, also arising prior to the 1975 amendment. The defendants argue that the UAPA, as clarified by the amendment and interpreted in *Lee,* never provided a right of appeal to this plaintiff. We agree.

The plaintiff responds by arguing that the decision in *Lee* should not be applied retroactively to bar this appeal, the right to which had been clearly established by prior opinions of this court.[6] Specifically, the plaintiff points to *Murphy* v. *Berlin Board of Education,* 167 Conn. 368, 355 A.2d 265 (1974), and *Adamchek* v. *Board of Education,* 174 Conn. 366, 387 A.2d 556 (1978). In *Murphy,* a pre-amendment case, we held that the UAPA did govern the rights of a tenured teacher suspended by a board of education. In *Adamchek,* we

tenant governor [or], attorney general[,] **OR TOWN OR REGIONAL BOARDS OF EDUCATION** authorized by law to make regulations or to determine contested cases."

Bold type indicates additions to the statute while the material deleted by the amendment is in brackets.

[6] The plaintiff also claims that our discussion of the applicability of the UAPA in *Lee* v. *Board of Education,* 181 Conn. 69, 434 A.2d 333 (1980), is dictum, does not have the force of law, and therefore could not operate to overrule prior decisions. We disagree. We have recognized that the procedures required by the UAPA "exceed the minimal procedural safeguards mandated by the due process clause." *Taylor* v. *Robinson,* 171 Conn. 691, 698–99, 372 A.2d 102 (1976); see also *Leib* v. *Board of Examiners for Nursing,* 177 Conn. 78, 83, 411 A.2d 42 (1979). We also abide by the generally accepted "policy of self-restraint and the basic judicial duty to eschew unnecessary determinations of constitutional questions. *Pepin* v. *Danbury,* 171 Conn. 74, 88, 368 A.2d 88 [1976]." *Negron* v. *Warden,* 180 Conn. 153, 166, 429 A.2d 841 (1980). It was therefore entirely proper and necessary for us first to determine the applicability of the UAPA to the conflict in *Lee* before turning to the constitutional issues briefed by the parties, since those constitutional issues might have been avoided by the application of the UAPA.

held in 1978 that nontenured teachers terminated prior to the 1975 amendment retained the rights provided under the UAPA, including the right to appeal their termination. The plaintiff claims to have relied on these opinions in choosing to appeal rather than pursue some other remedy.[7]

We start our analysis with the observation that "[t]he courts of the states are free to determine the extent to which new decisions are to have retrospective effect. *Great Northern Ry. Co.* v. *Sunburst Oil & Refining Co.,* 287 U.S. 358, 364, 53 S. Ct. 145, 77 L. Ed. 360 [1932]." *Reed* v. *Reincke,* 155 Conn. 591, 596, 236 A.2d 909 (1967). The plaintiff suggests that we borrow the analysis of the federal courts, which have developed comprehensive, if somewhat confusing, rules on the subject.

In *Chevron Oil Co.* v. *Huson,* 404 U.S. 97, 92 S. Ct. 349, 30 L. Ed. 2d 296 (1971), the United States Supreme Court suggested a three-factor test to be met before a judicial decision would be applied prospectively only: "First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see, e.g., *Hanover Shoe* v. *United Shoe Machinery Corporation,* [392 U.S. 481, 496, 88 S. Ct. 2224, 20 L. Ed. 2d 1231 (1968)], or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, e.g., *Allen* v. *State Board of Elections,* [393 U.S. 544, 572, 89 S. Ct. 817, 22 L. Ed. 2d 1 (1969)]. Second, it has been stressed that 'we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' *Linkletter* v. *Walker,* [381 U.S. 618, 629, 85 S. Ct. 1731, 14 L. Ed. 2d 601 (1965)]. Finally, we have weighed the inequity imposed by

---

[7] This case does not require us to consider the existence or scope of alternate means to review administrative rulings that cannot be appealed.

retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.' *Cipriano* v. *City of Houma,* [395 U.S. 701, 706, 89 S. Ct. 1897, 23 L. Ed. 2d 647 (1969)]." *Chevron Oil Co.* v. *Hanson,* supra, 106–107. The liberal approach to nonretroactivity taken in *Chevron Oil* and similar cases stems from an erosion of the view "that where a court overrules a previous decision the effect is not to make a change in the law but to recognize that the court was mistaken in its first declaration of it and to establish that the law always was as stated in the later decision." *Mickel* v. *New England Coal & Coke Co.,* 132 Conn. 671, 676, 47 A.2d 187 (1946). Under modern legal theory, courts are generally more willing to admit that some decisions announce a new rule of law rather than a new application of an old one and to recognize the problems that may be created thereby. See *Wilson* v. *Henderson,* 742 F.2d 741 (2d Cir. 1984). For several reasons we are not convinced that the more flexible approach is proper here.

The most obvious reason is that the holding of the *Lee* court was not the creation of a new rule of law. To the contrary, the court, in viewing the 1975 amendment as "a legislative declaration of the meaning of the original act"; *Lee* v. *Board of Education,* supra, 75–76; expressly stated that it was finding the old law — "recogniz[ing] that the court was mistaken in its first declaration of it and . . . establish[ing] that the law always was as stated in the later decision." *Mickel* v. *New England Coal & Coke Co.,* supra, 676. As construed in *Lee,* the UAPA *never* applied to boards of education, *Murphy* and *Adamchek* notwithstanding. Since we concluded in *Lee* that the legislature never intended to provide a right of appeal under the UAPA to teachers, it follows that the plaintiff cannot maintain that she has

been deprived of any right afforded by statute. Accord *Connecticut Steel Co.* v. *National Amusements, Inc.,* 166 Conn. 255, 263, 348 A.2d 658 (1974). A right of appeal from an administrative agency is, of course, necessarily a creature of statute. *Delagorges* v. *Board of Education,* 176 Conn. 630, 633, 410 A.2d 461 (1979); see also *Herman* v. *Division of Special Revenue,* 193 Conn. 379, 386–87, 477 A.2d 119 (1984).

A second reason for the inapplicability of *Chevron Oil* was expressed by the United States Supreme Court in *Firestone Tire & Rubber Co.* v. *Risjord,* 449 U.S. 368, 101 S. Ct. 669, 66 L. Ed. 2d 571 (1981). In *Firestone,* the court concluded that "[a] court lacks discretion to consider the merits of a case over which it is without jurisdiction, and thus, by definition, a jurisdictional ruling may never be made prospective only." Id., 379. The decision in *Lee,* while nonjurisdictional as to tenured teachers who are accorded an independent right to appeal under General Statutes § 10-151 (a), is of jurisdictional significance to nontenured teachers, as this court has consistently held that § 10-151 (a) provides no right of appeal to nontenured teachers. *Miller* v. *Board of Education,* 166 Conn. 189, 348 A.2d 584 (1974); see also *Garovoy* v. *Board of Education,* 178 Conn. 618, 622, 424 A.2d 297 (1979). While the United States Supreme Court's decision to limit prospectively the holding in *Northern Pipeline Construction Co.* v. *Marathon Pipe Line Co.,* 458 U.S. 50, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982), casts some doubt on the rule of automatic retroactivity expressed in *Firestone,* several courts have found the reasoning of *Firestone* persuasive. See, e.g., *Cuddy* v. *Carmen,* 694 F.2d 853, 859 n.24 (D.C. Cir. 1982); *deMouy* v. *Ingvoldstad,* 664 F.2d 21, 22 (3d Cir. 1981).

Thus, in *Gager* v. *White,* 53 N.Y.2d 475, 425 N.E.2d 851, 442 N.Y.S.2d 463 (1981), the New York Court of Appeals eschewed the use of any balancing test such

as that proposed in *Chevron Oil,* stating that "the fundamental nature of the jurisdictional determination [governed by the new rule] renders conventional criteria for fixing an appropriate line of demarcation for overruling academic." *Gager* v. *White,* supra, 485 (referring to decision in *Rush* v. *Savchuk,* 444 U.S. 320, 100 S. Ct. 571, 62 L. Ed. 2d 516 (1981)). The court concluded that "any reliance by [the] plaintiffs is irrelevant." *Gager* v. *White,* supra, 488; see also *Hoff* v. *Kempton,* 317 N.W.2d 361, 364 (Minn. 1982). In *Holzsager* v. *Valley Hospital,* 646 F.2d 792, 798 n.4 (2d Cir. 1981), the majority avoided the question raised by *Firestone,* while Judge Meskill concurred, expressing some concerns which we share. "I hesitate to rely on *Chevron* because (1) the *Chevron* criteria are general whereas *Firestone* deals specifically with jurisdiction; (2) *Chevron* did not decide whether a jurisdictional ruling should be applied prospectively only, and (3) I have been unable to find an instance where any circuit court has relied on the criteria of *Chevron* in deciding whether to give retroactive effect to a jurisdictional ruling." *Holzsager* v. *Valley Hospital,* supra, 798 (Meskill, J., concurring); cf. *Snyder* v. *Smith,* 736 F.2d 409, 415 (7th Cir. 1984). The present case, which deals with subject matter jurisdiction, provides even less justification for a court to bootstrap its authority to hear a case that would otherwise be nonappealable than did *Gager* v. *White,* supra, or *Holzsager* v. *Valley Hospital,* supra. Those cases construed the impact of opinions concerning personal jurisdiction, which, unlike subject matter jurisdiction, may be waived. See *Reed* v. *Reincke,* supra. While we need not go so far as to hold that jurisdictional rulings of this court may never be applied nonretroactively, we do hold the *Chevron Oil* test inapplicable to jurisdiction issues and find no exceptional circumstances or overriding needs of public policy similar to those present in *Northern Pipeline Construction*

*Co.* v. *Marathon Pipe Line Co.,* supra, to merit a conclusion of nonretroactivity. Accord *Hodge* v. *Hodge,* 178 Conn. 308, 320–23, 422 A.2d 280 (1979).

We note in addition that the denial of a right of appeal to the plaintiff does not implicate any constitutional guarantees. "There is no inherent right to judicial review of administrative actions. This court has repeatedly held that appeals to the courts from administrative officers or boards may be taken only when a statute provides authority for judicial intervention. . . . The Supreme Court of the United States has recently confirmed these holdings, stating that 'the Due Process Clause of the Fourteenth Amendment [does] not guarantee [teachers] that the decision to terminate their employment would be made or reviewed by a body other than the School Board.' *Hortonville Joint School District No. 1* v. *Hortonville Education Assn.,* 426 U.S. 482, 497, 96 S. Ct. 2308, 49 L. Ed. 2d 1 (1976)." (Citations omitted.) *Delagorges* v. *Board of Education,* 176 Conn. 630, 633, 410 A.2d 461 (1979). Having recognized the absence of any such statutory authority, we find that the trial court lacked jurisdiction to entertain this appeal.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the appeal for lack of jurisdiction.

In this opinion the other judges concurred.